IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM STAPLES,

                    Plaintiff,

          v.                                    CASE NO. 08-3233-SAC

CLAUDE CHESTER, et al.,

                    Defendants.


MEMORANDUM AND ORDER

     This matter comes before the court on a complaint filed
pursuant to the Federal Tort Claims Act (FTCA) and *Bivens*[1] by a
prisoner in federal custody.

     Defendants have filed a motion to dismiss, or, in the
alternative, for summary judgment (Doc. 43). The grounds asserted in
favor of this motion include the failure to exhaust administrative
remedies, failure to state a claim for relief, and qualified
immunity. Plaintiff filed a combined motion in opposition and cross-
motion for summary judgment (Doc. 59).

     Plaintiff's grounds for relief include claims under the Eighth
Amendment arising from the conditions of his confinement, including
the diet provided, and medical and dental care. He also asserts
claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671,
*et seq.*, concerning property damage, mail processing, and medical

---

[1]

  *Bivens v. Six Unknown Named Agents of the Fed. Bur. of
  Narcotics*, 403 U.S. 388 (1971).

restrictions. Plaintiff seeks injunctive relief[2] and damages.

**Factual background**

*A. Medical care*

Plaintiff suffers from multiple medical conditions, including diabetes, hypertension, and orthopedic issues, including hip and lower back pain. He was assigned to the United States Penitentiary, Leavenworth (USPL) in November 2005, but was transferred to a federal medical center due to a chronic arthritic condition in his left hip. He later received a hip replacement and was transferred back to USPL in early February 2008. He was transferred to the United States Penitentiary in Pollock, Louisiana in March 2009, and he is presently incarcerated in the Schuylkill Federal Correctional Institution, Minersville, Pennsylvania. The claims in the present action arose during the second period of plaintiff's confinement in the USPL.

Plaintiff underwent an intake health screening on February 6, 2008, and his medical concerns were noted at that time. He arrived at the USPL with a TENS unit[3], a cane, soft shoes, shoe inserts, and a heel lift for his shoe. Plaintiff was scheduled for evaluation by the Clinical Director of the USPL Chronic Care Clinic (CCC) in two

---

[2]

Because plaintiff has been transferred from the USPL, his requests for injunctive relief are moot. *See Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997).

[3]

 "TENS" is an acronym for "transcutaneous electrical nerve stimulator." This device is used for pain relief and uses an electric current fixed to the skin near the site of the pain. *Carter v. Glanz*, 2012 WL 234635, *2 n 1. (N.D. Okla. 2012)(citing www.webmd.com).

days. He was not allowed to keep the TENS unit, but he was allowed to retain the remaining medical equipment.

Plaintiff was examined by another physician on February 8, 2008, and he received new medications and counseling about his medical conditions.

Plaintiff was seen by the Clinical Director again on February 21, 2008. At that appointment, his condition was evaluated, his medications reviewed, and he was given recommended medical duty status restrictions including cell assignment on first floor, lower bunk, limited stair climbing, lifting restrictions, no prolonged standing, and special equipment, including a cane. An orthopedic consultation was requested, and plaintiff was seen by a specialist in April 2008.

During a CCC appointment in October 2008, plaintiff requested a TENS unit and a different mattress. The Clinical Director denied the requests, finding no clinical basis for the items requested. The Clinical Director also was concerned with plaintiff's failure to comply with recommended treatment for diabetes and other conditions.

Plaintiff continued to receive medical attention until his transfer from USPL. None of the medical personnel involved found any medical need for the TENS unit or shorter cane sought by plaintiff, nor did the Director find that any prescribed medication was inappropriate, that plaintiff needed an inmate companion for assistance, or that he required special arrangements, such as an early mealtime, to accommodate his medical conditions.

The Clinical Director at USPL found no medical need for the

TENS unit sought by plaintiff and states, in an affidavit, that had

he determined plaintiff required access to such a device, a special

mattress, a shorter cane, or assistance by another inmate, he would

have sought to transfer plaintiff to a medical facility.[4]

Medical staff at USPL monitored plaintiff's medications to

evaluate the most appropriate remedies for his pain while avoiding

the use of strong narcotics.

The Clinical Director describes the medical duty restrictions

as suggestions to manage plaintiff's pain, and the Director observed

no clinical evidence that plaintiff's condition was exacerbated by

any stair climbing or slip and fall by plaintiff during his

incarceration in the USPL.[5]

On November 15, 2008, plaintiff was issued a disciplinary

report for stealing after he was identified on videotape placing a

typewriter into a bag in the facility law library. The videotape

shows plaintiff carrying the typewriter down a stairway, through a

hallway, and into his cell. Petitioner was found guilty of the

offense charged in an administrative disciplinary proceeding.[6]

---

[4]Doc. 43, Ex. 3, McCollum declaration, ¶¶ 12-14.

[5]*Id.*, ¶ 15.

[6]

While plaintiff appears to contest the veracity of this
incident, the court takes notice of *Staples v. Keffer*, 2010
WL 2813299 (W.D.La. 2010), which upheld the disciplinary
finding and discusses the facts supporting the finding,
including the discovery of the missing typewriter in
plaintiff's cell. The court accepts this decision as a
reliable basis for the fact that plaintiff was able to carry
a typewriter for some distance and to use stairs with that
burden.

On January 8, 2009, plaintiff was assigned to a lower bunk on the second floor of a housing unit.

On January 29, 2009, he filed an administrative tort claim, claiming he was improperly assigned to an upper bunk and an upper floor on January 8, 2009. He claimed this assignment resulted in pain when he used the stairs and when he climbed into the upper bunk. The claim was denied on January 13, 2010.

*B. Inmate mail*

The Bureau of Prisons (BOP) had procedures for the processing of inmate mail and has policies governing the handling of the categories of mail addressed to inmates. Institutional staff is required to be familiar with the processing of inmate mail.

BOP Program Statement 5265.11, *Correspondence*, designates as "Special Mail" correspondence to and from certain entities, including legislators, courts, law enforcement, and news media representatives. Special Mail is to be opened or inspected for contraband in the presence of the inmate, and incoming Special Mail must adequately identify the sender and must be marked "Special Mail - Open only in the presence of the inmate." Both outgoing and incoming special mail, including legal mail, is inspected in the presence of the inmate.

Correspondence from a court is special mail; however, the BOP does not consider correspondence from the clerk of the court to fall within special mail regulations and handling policies.[7] Likewise,

---

[7]Ex. 5, Cecil declaration, ¶ 5.

the BOP takes the position that to ensure that special
correspondence is from an individual entitled to the authority of
the office, an individual's name must be included in the return
address of the envelope.[8]

In contrast to special mail, general correspondence may be
examined and read outside the presence of the inmate.

Plaintiff complains that several pieces of special
correspondence were opened outside his presence contrary to the
policies of the BOP.

These items are:

1. Mail addressed to plaintiff from the Paul E. Wilson
Defender Project, The University of Kansas School of Law,
postmarked April 2, 2008, and stamped: "CONFIDENTIAL
Attorney/Client Mail Do not open outside presence of
addressee.

2. Mail addressed to plaintiff from the Court of Appeals
of Wisconsin, postmarked May 9, 2008.

3. Mail addressed to plaintiff from David R. Schanker,
Clerk of Court of Appeals, Madison, Wisconsin, postmarked
May 6, 2008.

4. Mail addressed to plaintiff from Office of the Clerk,
United States District Court Western District of Oklahoma,
dated May 21, 2008.

5-6. Mail addressed to plaintiff from Leslie G. Whitmer,
Clerk, United States District Court, Eastern District of
Kentucky, dated May 29, 2008, and May 30, 2008.

7. Mail addressed to the plaintiff from the United States
Attorney's Office, Eastern District of Wisconsin, dated
June 10, 2008.

8. Mail addressed to the plaintiff from Court of Appeals
of Wisconsin, postmarked June 10, 2008.

---

[8]Id., ¶ 6.

9. Mail addressed to plaintiff from Circuit Court, Branch 13, Michael N. Nowakowski, Judge, Madison, Wisconsin, postmarked April 14, 2008.

10. Mail addressed to plaintiff from Circuit Court, Branch 6, Shelley J. Gaylord, Judge, Madison, Wisconsin, postmarked April 7, 2008.

11. Mail addressed to plaintiff from Clerk, U.S. District Court, U.S. Courthouse, Oklahoma City, Oklahoma, postmark not legible.

12. Mail addressed to plaintiff from U.S. Department of Justice, Federal Bureau of Prisons, stamped "SCRO LEGAL", postmarked May 6, 2008.

13. Certified mail addressed to plaintiff from U.S. Department of Justice, Federal Bureau of Prisons, with handwritten notation "Lgl/nc", postmarked May 16, 2008.

14. Mail addressed to plaintiff from Leslie G. Whitmer, Clerk, United States District Court, Eastern District of Kentucky, and showing a case number, "5:07-cv-00385-JBC" postmarked June 26, 2008.

15. Mail addressed to plaintiff from Leslie G. Whitmer, Clerk, United States District Court, Eastern District of Kentucky, postmarked July 2, 2008.

16. Mail addressed to plaintiff from Clerk, U.S. District Court, Oklahoma City, Oklahoma, stamped "SPECIAL MAIL OPEN ONLY IN PRESENCE OF INMATE" postmarked July 8, 2008.

17. Mail addressed to plaintiff from David R. Schanker, Clerk of Court of Appeals, Madison, Wisconsin, stamped "SPECIAL MAIL OPEN ONLY IN PRESENCE OF INMATE", postmark not shown.

18. Mail addressed to plaintiff from David R. Schanker, Clerk of the Supreme Court, Madison, Wisconsin, stamped "SPECIAL MAIL OPEN ONLY IN PRESENCE OF INMATE", postmark not shown.

19. Mail addressed to plaintiff from Office of the Clerk, United States District Court, Western District of Oklahoma, stamped "SPECIAL MAIL OPEN ONLY IN THE PRESENCE OF THE INMATE", postmark not legible.

20. Mail addressed to plaintiff from David R. Schanker, Clerk, Wisconsin Supreme Court, stamped "SPECIAL MAIL OPEN ONLY IN PRESENCE OF INMATE", postmarked August 11, 2008.

21. Mail addressed to plaintiff from David R. Schanker, Clerk, Court of Appeals, Madison, Wisconsin, stamped "SPECIAL MAIL OPEN ONLY IN PRESENCE OF INMATE", postmarked August 13, 2008.

22. Mail addressed to plaintiff from Office of the Clerk, United States District Court, Western District of Oklahoma, stamped "SPECIAL MAIL OPEN ONLY IN THE PRESENCE OF THE INMATE", postmark not legible.

## Discussion

### Summary judgment standard

Both parties seek summary judgment. Summary judgment is proper where the moving party establishes that there is no "genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In considering a motion for summary judgment, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A "material" fact is one that is "essential to the proper disposition of the claim." *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Likewise, a factual issue is "genuine" where "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id*. (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Id.* at 670-71.

**The exhaustion requirement**

A. Claims under *Bivens*

The Prison Litigation Reform Act (PLRA) requires a prisoner to present claims through administrative remedies before presenting them in a federal lawsuit. *See* 42 U.S.C. § 1997e(a)("No action shall be brought...until such administrative remedies as are available are exhausted.") This exhaustion requirement applies to plaintiff's claims brought pursuant to *Bivens*. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002)("[F]ederal prisoners suing under *Bivens*..., must first exhaust inmate grievance procedures just as state prisoners much exhaust administrative processes prior to instituting a § 1983 suit."). Where a prisoner fails to present claims through the full administrative remedy process, such claims are subject to dismissal. *See Jones v. Bock*, 549 U.S. 199, 211 (2007)("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

The administrative remedy process available to inmates in federal custody is a four-part procedure that requires a prisoner to first seek informal review of a grievance. If the prisoner is dissatisfied with the outcome, he next may present a complaint to the warden of the facility with a copy of the informal resolution attached. If the warden's response does not resolve the matter, the prisoner may appeal to the Regional Director of the BOP, and, finally, the prisoner may appeal to the Director, National Inmate

Appeals, in the Office of the General Counsel. *See* 28 C.F.R. §§ 542.10-19. Where an inmate reasonably believes a matter is sensitive and would endanger his safety or well-being if its substance were widely known, the inmate may submit the request directly to the Regional Manager. The Regional Manager may accept the request or may advise the prisoner to initiate the grievance procedure at the local level. 28 C.F.R. § 542.14.

Since July 1990, the BOP has maintained records of administrative grievances filed by prisoners in a database called SENTRY. This database tracks administrative grievances filed by prisoners and allows a search of complaints and their subject matter. The database reflects that plaintiff filed 124 administrative remedies during his federal incarceration and 44 during his assignment to USPL. During his incarceration at the USPL, 33 of his administrative grievances were rejected for various deficiencies or as untimely.

Defendants assert plaintiff failed to exhaust administrative remedies on the claims he presents pursuant to *Bivens*, namely, claims concerning medical and dental care, case file location, restrictions to a lower bunk and limited stair climbing, lack of an inmate assistant, lack of access to medical equipment, mail handling, retaliation, cell searches, harassment, diet issues, lock downs, movement restrictions, dress restrictions, and identification card requirements. (Doc. 44, Ex. 1, Sheldrake Declaration, ¶ 14, Attach. D., plaintiff's administrative remedy data, and Doc. 62, pp. 9-11, Ex. 1, Sheldrake Supplemental

Declaration, Attach. B.)

In his response in opposition to the defendants' motion, plaintiff argues generally that he was prevented from pursuing remedies due to his medical restrictions and to interference by staff members. (Doc. 59., pp. 3-4.)

The failure of a plaintiff to exhaust is an affirmative defense. *Jones*, 549 U.S. at 212. When a defendant has shown a failure to properly exhaust administrative remedies, "the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials." *Tuckel v. Grover*, 660 F.3d 1249, 1250 (10th Cir. 2011). Generally, a remedy is not "available" under the PLRA where "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy." *Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010).

Here, it appears the crux of plaintiff's argument is that he sometimes was unable to deliver grievances to the proper place due to a medical condition that limited his use of stairs. It is true that plaintiff had some suggested restrictions that included limitation on his use of stairs. However, it also appears that he used the stairs on some occasions, and that Dr. McCollum, the USPL Clinical Director, saw no change in his condition as a result of that activity.[9]

---

[9]

Doc. 44, Ex. 3, ¶ 16 reads: "The plaintiff's medical duty restrictions, such as a lower floor and bunk, are suggestions to assist with management of his chronic back

But most importantly, in the examples cited by defendants, it appears plaintiff in fact was able to file the grievances, but he failed to file them properly, resulting in their rejection. The materials submitted by defendants show plaintiff's grievances were rejected for reasons including failures to attach the institutional level response and informal resolution forms, his attempts to characterize grievances as sensitive, his failure to provide the proper number of continuation pages, and his failure to timely submit administrative appeals. *See* Doc. 62, Ex. 1, ¶ 9.

Having considered the thorough administrative record and plaintiff's general assertions of medical restrictions, the court concludes that he cannot overcome his failure to properly exhaust administrative remedies. Therefore, plaintiff's claims brought pursuant to *Bivens* must be dismissed.

*B. Claims under the FTCA*

1. *Exhaustion*

Defendants also seek the dismissal of several claims filed pursuant to the FTCA on the grounds that plaintiff failed to properly exhaust the administrative tort remedy. "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*,

---

and hip pain. Even if such recommendations were not followed, I did not see any clinical indication the plaintiff's chronic condition was worsened as a result of stair climbing, or any slip or fall while incarcerated at USP Leavenworth. To the contrary, the plaintiff's medical condition was in existence prior to his incarceration, was chronic in nature, and was appropriately treated by medical staff."

508 U.S. 106, 113 (1993)("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")

The exhaustion requirement is satisfied where the plaintiff has presented an administrative tort claim to the appropriate federal agency and that claim has been finally denied by the agency. *See* 28 U.S.C. § 2401(b). A claim is barred unless it is presented to the appropriate agency within two years after the claim accrues and unless the federal lawsuit is commenced within six months from the mailing of the notice of final denial by the agency. *Id.*

Defendants argue plaintiff failed to exhaust the administrative tort remedy on his claims concerning medical care, access to medical equipment, medical restrictions, prescription medication, a special mattress, an inmate assistant, dental care, cell searches, placement in an upper bunk or upper housing unit with the exception of January 2009, and the handling of certain mail.[10]

The court has examined plaintiff's response and finds no argument that might counter the assertion that he failed to exhaust the administrative tort remedy on these claims. Accordingly, the court must dismiss the unexhausted claims.

---

[10]
Defendants do not contest the exhaustion of remedies concerning the items detailed in the statement of facts.

2. *Claims of property loss*

To the extent plaintiff seeks relief under the FTCA for

claims relating to loss or damage to personal property, including

incoming mail, his claims must be dismissed for lack of subject

matter jurisdiction.

The FTCA waives the sovereign immunity of the federal

government for claims arising from:

> loss of property ... caused by the negligent or wrongful
> act or omission of any employee of the Government while
> acting within the scope of his office or employment,
> under circumstances where the United States, if a
> private person, would be liable to the claimant in
> accordance with the law of the place where the act or
> omission occurred. 28 U.S.C. § 1346(b)(1).

> The waiver, however, is subject to exceptions.
> Plaintiff's claims fail under § 2680(c), which states an
> exemption for "[a]ny claim arising in respect of ... the
> detention of any ... property by any ... law enforcement
> officer." The exemption applies to any claim arising
> from the negligent handling or storage of detained
> property or detention of property by a law enforcement
> officer, including Bureau of Prisons employees. *See Ali
> v. Fed. Bureau of Prisons*, 552 U.S. 214, 218 (2008).

Because plaintiff's property claims arise from his federal

incarceration, the exemption under § 2680(c) requires the

dismissal of claims concerning property loss or damage.

*3. Handling of legal mail*

Plaintiff claims that on numerous occasions BOP employees

negligently opened his legal or special mail.

As noted, the governing federal regulations require legal

correspondence to be opened in the presence of the inmate to

inspect it for contraband and to verify that enclosures also

qualify as legal mail. 28 C.F.R. 540.18(a). This provision applies

only to correspondence upon which the sender is "adequately

identified on the envelope" and which bears the statement "Special

Mail - Open only in the presence of the inmate". *Id*. Where these

criteria are not satisfied, the mail is to be deemed general

correspondence, and BOP staff may open, read, and inspect it

outside the presence of the  addressee. § 540.18(b).

The Bureau of Prisons has developed Program Statement

5800.10, *Mail Management Manual* (Doc. 44, Ex. 5, Attach. A.) and

Program Statement 5265.11, *Correspondence* (*Id*., Attach. B.) to

provide detailed guidance on the processing of inmate mail,

including special mail

Program Statement 5265.11 provides, in part, as follows:

"Special Mail" ... includes correspondence received from
the following: President and Vice President of the
United States, attorneys, Members of the U.S.  Congress,
Embassies and Consulates, the U.S. Department of Justice
(excluding the Bureau of Prisons but including U.S.
Attorneys), other Federal law enforcement officers,
State Attorneys General, Prosecuting Attorneys,
Governors, U.S. Courts (including U.S. Probation
Officers), and State Courts. For incoming correspondence
to be processed under the special mail procedures (see
[28 C.F.R.]§§ 540.18-540.19), the sender must be
adequately identified on the envelope, and the front of
the envelope must be marked "Special Mail - Open only in
the presence of the inmate".
*Id*. at p. 4.

According to the statement of R.K. Cecil, a Correctional

Systems Specialist for the North Central Regional Office of the

BOP:

While correspondence from a court is considered to be
special mail, correspondence from the clerk of the
court, which is more clerical and administrative in
nature, is not considered by the BOP to fall under the
special mail regulations and policies.

15

With respect to a sender being identified, to ensure the
correspondence is coming from an individual who should
enjoy the privileges associated with the office (i.e.
Judge, Attorney, Law Enforcement Official, etc.), it is
necessary to ensure a specific person's name is included
in the return address portion of the envelope. (Doc. 44,
Ex. 5.)

Viewed in light of this guidance to BOP staff concerning what

was required for an item to be adequately identified, the action

taken by BOP staff in opening plaintiff's mail was in compliance

with governing policy and was not negligent conduct.

While the items identified by the plaintiff might reasonably

be considered as special mail, none of them bears both the

required marking of special mail and an adequately-identified,

qualified sender, as described by BOP guidance. Accordingly, the

court concludes defendants are entitled to summary judgment on

this issue.

*4. Claim of medical malpractice*

As stated earlier, under the FTCA, the federal government is

"liable for its tortious conduct in the same manner and to the

same extent as a private individual under like circumstances in

that jurisdiction would be liable." 28 U.S.C. §§ 1346(b), 2674.

Therefore, the plaintiff's medical malpractice claim is evaluated

under Kansas law, as the alleged malpractice occurred in Kansas.

To prevail in his claim of medical malpractice, plaintiff

must prove three elements: (1) a duty between the physician and

the patient; (2) a breach of that duty; and (3) a causal

connection between such a breach and the injury sustained by the

patient. *Wozniak v. Lipoff*, 750 P.2d 971, 975 (Kan. 1988).

The Bureau of Prisons is statutorily required to "provide for the safekeeping, care, and subsistence of all persons ... convicted of offenses against the United States", 18 U.S.C. §4042(a)(2), and thus, medical personnel at the USPL had a duty to provide plaintiff with medical care.

However, after considering the record, the court finds no support for the remaining elements, namely, a breach of the duty and a link between a breach and an injury.

A breach of duty is not presumed. *Hare v. Wendler*, 949 P.2d 1141, 1146 (Kan. 1997). The record shows that plaintiff received ongoing care for his chronic health concerns, that he was provided with medication and medical aids, and that he was referred to an orthopedist outside the prison. While plaintiff did not retain access to the TENS unit, the record contains an explanation for the decision, namely, that such electrical equipment is not allowed at the USPL due to the difficulty of monitoring its use sufficiently.

Likewise, the record does not contain a showing of injury to the plaintiff stemming from any breach in the duty by medical personnel. Rather, the record shows that Dr. McCollum, who participated in the ongoing medical care plaintiff received, found no clinical evidence that plaintiff's condition had deteriorated during his incarceration at the USPL.

The court finds the record does not support a claim of medical malpractice and concludes defendants are entitled to summary judgment on this claim.

17

*C. Individual capacity claims against Public Health Service employees*

Plaintiff asserts claims against Dr. Weber, the chief dentist at USPL and Small, a physician's assistant there, in their individual capacities. Defendants assert they are entitled to dismissal on the ground of immunity. The court agrees that these defendants, as Public Health Service employees, are immune from suit in a *Bivens* action pursuant to 42 U.S.C. §233(a).

Section 223(a) "makes the United States the exclusive defendant for injuries that employees of the Public Health Service cause while acting within the scope of their employment." *Lurch v. United States*, 719 F.3d 333, 349 n. 10 (10th Cir. 1983). A claim under the FTCA is the exclusion remedy for claims asserted against these employees.

## Conclusion

For the reasons set forth, the court concludes the defendants' motion to dismiss, or, in the alternative, for summary judgment should be granted. As discussed, many of plaintiff's claims are subject to dismissal due to his failure to properly complete administrative remedies. His remaining claims challenging the processing of his legal mail and asserting medical malpractice are not supported. Summary judgment is appropriate on those claims.

IT IS, THEREFORE, BY THE COURT ORDERED defendants' motion to dismiss, or in the alternative, motion for summary judgment (Doc. 43) is granted.

IT IS FURTHER ORDERED plaintiff's motion for discovery (Doc. 53) is denied.

IT IS FURTHER ORDERED plaintiff's motion for extension of time to file a response (Doc. 57) is denied as moot, as plaintiff filed that response.

IT IS FURTHER ORDERED plaintiff's cross-motion for summary judgment (Doc. 63) is denied.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED.**

DATED:   This 23rd day of March, 2012, at Topeka, Kansas.


                            S/ Sam A. Crow
                            SAM A. CROW
                            U.S. Senior District Judge